UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DR. JULIE DIRICO and DR. MARTIN HYMAN,<br><br>Plaintiffs,<br><br>v.<br><br>BROOKSTONE CAPITAL MANAGEMENT, LLC, CHRISTOPHER CONOVER and HUDSON VALLEY WEALTH MANAGEMENT, INC.,<br><br>Defendants. | **Docket No. _____**<br><br><br>**COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiffs, as defined below, by and through their undersigned counsel, except for their own acts, which are alleged based on knowledge, allege the following on information and belief based upon the investigation by Plaintiffs' counsel:

**PRELIMINARY STATEMENT**

1.      This is a claim for breach of fiduciary duty, professional negligence, negligent retention and supervision. and aiding and abetting breach of fiduciary duty, brought by Plaintiffs Dr. Julie DiRico and Dr. Martin Hyman (sometimes jointly referred to below as "Plaintiffs") against Defendants Brookstone Capital Management LLC ("Brookstone"), Christopher Conover ("Conover") and Hudson Valley Wealth Management, Inc. ("Hudson").

2.      The Plaintiffs, husband and wife, are retired physicians who engaged significant nonparty Keith Ryan Gebert ("Gebert"), his now-defunct financial advisory firm Rightbridge Capital Management LLC, and Brookstone to provide investment advice for investing their retirement savings in a safe and prudent manner.  At relevant times, Gebert and Defendant Brookstone owed the Plaintiffs a duty of reasonable care, as well as fiduciary duties to act only

1

in the best interests of Plaintiffs, in connection with the investments that they recommended to the Plaintiffs.

3. In or about July 2022, Gebert recommended that Plaintiffs invest $1,200,000.00 of their retirement savings in ProudLiving New Jersey Real Estate Fund LP ("ProudLiving"). Gebert described the investment as similar to a bond that yielded 10% annually in interest, and having a three year duration or period in which Plaintiffs' investment would remain illiquid. This sum of $1,200,000.00 represented about 60% of Plaintiffs' liquid retirement savings. Based on the trust and confidence that they placed in Gebert and Brookstone, the Plaintiffs made the investment in ProudLiving as recommended. The ProudLiving limited partnership units were delivered into Plaintiffs' Brookstone advisory account held at TD Ameritrade in September 2022. (**Exh. 1**)

4. Defendants Hudson and Conover, also an investment advisory firm and investment advisor, respectively, actively participated in the ProudLiving offering. They collected investor paperwork, questionnaires and funds, lent credibility and legitimacy to the ProudLiving enterprise, solicited investments in ProudLiving, and otherwise acted negligently and substantially assisted Gebert and Brookstone in their breaches of fiduciary duty.

5. Unfortunately for the Plaintiffs, this highly recommended investment representing a large portion of their retirement savings now appears to be a fly-by-night enterprise. The value of Plaintiffs' investment was written down to zero as of February 29, 2024, and ProudLiving's principal has refused to provide any information concerning the status of the fund, invoking the advice of counsel. After a purported audit of ProudLiving, brokerage firm Charles Schwab wrote the value of the ProudLiving investment down from over $1.2 million to zero and later advised Plaintiffs that it would no longer maintain custody of the units.

6.Had Brookstone conducted proper due diligence on Gebert, it would have known that Gebert had been sanctioned by both New Jersey and Oregon for dishonest conduct in his work as an investment advisor representative (or "IAR") and also had been terminated in 2019 by a previous employer, Registered Investment Advisor AE Wealth Management, LLC, for "potential inappropriate activity related to a client account serviced by Mr. Gebert." *See* **Exhs. 2** and **3.**

7.Based on its advisory or co-advisory relationship with Plaintiffs, which pre-dated the ProudLiving investment by several years, Brookstone could also have easily discerned that the ProudLiving fund was in fact a highly speculative investment that was not suitable for the Plaintiffs given their disclosed investment objectives, assets, advanced age and risk tolerance. At a minimum, no prudent investment advisor would have recommended that elderly retirees invest such a high percentage of their assets in such an illiquid, high-risk private placement investment- regardless of its particulars.

8.As a result of these actions described below in more detail, the Defendants are responsible for the investment losses that the Plaintiffs has suffered.

## JURISDICTION AND VENUE

9.This Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a) because, on information and belief, Plaintiffs and Defendants are citizens of different States and the amount in controversy exceeds the sum or value of $75,000.00.

10.Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants Conover and Hudson reside in this District, a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, and Defendants conducted business in this District.

**PARTIES**

11.     Plaintiffs Dr. Julie DiRico and Dr. Martin Hyman, husband and wife, are natural persons residing in Watchung, New Jersey and are citizens of New Jersey.

12.     Defendant Brookstone (as defined above) is a limited liability company organized and existing under the laws of the State of Illinois with its principal place of business at 1745 South Naperville Road, Ste. 22, Wheaton, Illinois.  Brookstone is a Registered Investment Advisor (or "RIA") registered with the U.S .Securities and Exchange Commission ("SEC"). According to its filings with the SEC, Brookstone has approximately 324 investment professionals who are registered with one or more state securities authorities as investment advisor representatives (IARs) in its employ and has approximately 155 persons or firms that solicit investment advisory clients on its behalf.  Brookstone reportedly manages over $8 billion in assets for over 50,000 customers.

13.     Defendant Christopher Conover is the founder and President of Hudson, and is a resident of Blauvelt, New York, in Rockland County.  Conover is registered with Hudson as an IAR and has been employed by Hudson since 2008.  He is a citizen of the State of New York. Conover was listed as a related person of ProudLiving on a Form D filed in connection with sale of ProudLiving units dated August 4, 2020.

14.     Defendant Hudson (as defined above) is corporation organized under the laws of New York with its principal place of business in Pearl River, New York, and is a citizen of the State of New York.  Hudson is an RIA registered with the SEC.  According to its filings with the SEC, Hudson manages over $100 million in assets for approximately 491 customers. Defendants Brookstone, Conover and Hudson are sometimes collectively referred to herein as "Defendants".

## DEFAILED FACTUAL ALLEGATIONS

### A.    Plaintiffs' Relationship With Gebert and Brookstone

15.    Plaintiffs, husband and wife, are retired physicians who engaged significant nonparty Kevin Gebert's now-defunct financial advisory firm Rightbridge Capital Management LLC, and Brookstone to provide investment advice for investing their retirement savings in a safe and prudent manner.  On information and belief, Rightbridge, per Gebert, at relevant times introduced client assets to an advisory platform managed by Brookstone and acted as a solicitor for Brookstone.

16.    Plaintiffs first met Gebert in or about 2015, and Gebert introduced Plaintiffs to Brookstone as advisory or co-advisory clients in or before 2019.  Gebert held himself out as an expert in financial planning and investment management for retirees and people approaching retirement.  At the time they met Gebert, Dr. Julie DiRico had already retired and Dr. Martin Hyman was actively planning to retire, which he did as of 2018.  Impressed with Gebert's seeming expertise, the Plaintiffs decided to work with him and ultimately entrusted substantially all of their liquid retirement assets to him.

17.    As of 2022, Dr. Julie Hyman maintained an IRA account with Brookstone (TD Ameritrade account ending '342, hereinafter "Julie Hyman IRA").  As of August 31, 2022, the Julie Hyman IRA account contained $113,334.12 in assets including cash, exchange traded funds and fixed income securities.

18.    As of 2022, Dr. Martin Hyman maintained an IRA account with Brookstone (TD Ameritrade account ending '344, hereinafter "Martin Hyman IRA").  As of August 31, 2022, the

Martin Hyman IRA account contained $599,578.95 in assets including cash, exchange traded funds, fixed income securities and stocks.

19. As of 2022, Plaintiffs also maintained an account with Brookstone as joint tenants with rights of survivorship (TD Ameritrade account ending '075, hereinafter the "JTWROS Account"). As of August 31, 2022, the JTWROS Account contained $3,097.81 in assets held in cash. The Julie Hyman IRA, Martin Hyman IRA and JTWROS Account are hereinafter sometimes referred to as the "Brookstone Accounts".

20. At the outset of the relationship in or about 2015, Plaintiffs disclosed to Gebert their overall financial circumstances, including their ages, net worth, and risk tolerance, and advised Gebert that they wished for their retirement funds to be managed in a prudent manner that would provide for income during their retirement.

21. Specifically, Plaintiffs advised Gebert at the outset that they had limited liquid assets of less than $1 million, that Dr. Martin Hyman also owned an office building, and that they wished to avoid undue risk of loss of principal due to their limited liquid assets.

22. At relevant times Plaintiffs understood their relationship with Gebert and Brookstone to be a financial advisory relationship in which Gebert/Brookstone directed the activity in the Brookstone Accounts. Gebert and Brookstone, per Gebert, acted as Plaintiffs' fiduciary, established the asset allocations in the Brookstone Accounts, and selected the investments in the Brookstone Accounts.

23. In or about May 2022, Dr. Julie DiRico received an inheritance of approximately $1.2 million from her mother upon her mother's passing. Plaintiffs advised Gebert of the inheritance, and their desire to invest these sums in a conservative manner.

6

### B. The ProudLiving Solicitation

24. In or about July 2022, Gebert recommended that Plaintiffs invest $1,200,000.00 of their retirement savings- essentially, the sums that Dr. Julie DiRico had only recently inherited- in ProudLiving. Gebert described the investment as similar to a bond and having a three year period in which Plaintiffs' investment would remain illiquid. This sum of $1,200,000.00 represented about 60% of Plaintiffs retirement savings.

25. Prior to investing, Plaintiffs met with Gebert, who specifically represented that the ProudLiving notes would yield 10% a year in distributions and that Plaintiffs' principal was protected. Gebert further represented that ProudLiving was a "closed-end fund" based in New Jersey that had been "vetted by the SEC". This presentation appealed to Plaintiffs because of the ProudLiving fund's relatively high distribution rate that would purportedly provide them with a stream of income, and the fact that they did not foresee the need for the return of their $1,200,000 in principal for several years, during which time Gebert represented Plaintiffs would be receiving around $10,000 a month in income.

26. Based on the trust and confidence that they placed in Gebert and Brookstone, and Gebert's representations and presentation, the Plaintiffs made the investment in ProudLiving as recommended. The ProudLiving limited partnership units were delivered into Plaintiffs' Brookstone JTWROS Account in September 2022. (**Exh. 1**)

### C. Conover and Hudson's Role In Promoting and Assisting ProudLiving

27. Conover and Hudson, established as fiduciary investment advisors (and doing business as the "Hudson Companies"), lent Hudson's name, substantial assistance, and material aid to ProudLiving. Hudson and Conover were both mentioned in the Form D filed with the SEC in connection with the ProudLiving offering- Hudson as the putative Manager of

7

ProudLiving and Conover as its CEO. At relevant times Hudson also listed ProudLiving and another private fund as among its business activities on its Form ADV filed with the SEC. At relevant times Hudson and Conover held themselves out to the public as offering unique and exclusive investment opportunities in asset classes such as film, music and real estate that could not be found through traditional banks or brokerage firms.

28. Conover and Hudson collected investor questionnaires and forms from investors in ProudLiving in connection with investments in ProudLiving. On information and belief, Conover and Hudson also solicited investors for ProudLiving including from among Hudson's customers. The subscription agreement (**Exh. 4**) for ProudLiving directed Plaintiffs to send their signed paperwork to Hudson Valley Wealth Management, Inc. at Hudson's address in Pearl River, New York.

29. By collecting the subscription paperwork and questionnaires, Conover and Hudson was aware of the identities of investors solicited by Gebert, and, as an IAR and RIA respectively, would have been fully aware that Gebert was acting in a fiduciary capacity as to his investment advisory clients such as Plaintiffs. As such, Conover and Hudson knowingly and substantially assisted Gebert and Brookstone in their breach of fiduciary duty in connection with the ProudLiving offering.

### D.  ProudLiving Stops Paying Cash Distributions And Later Apparently Loses All Its Value

30. ProudLiving made only a few cash distributions to Plaintiffs, totaling only about $70,000. These payments ceased in 2023.

31. However, for well over a year, until early 2024, Plaintiffs' monthly statements for the JTWROS Account continually showed the ProudLiving investment as having maintained, and even increased, its value.

32. In March 2024, the Plaintiffs received a monthly statement for the JTWROS Account that showed a drop in value of their ProudLiving investment from $1,290,000.00 as of January 31, 2024, to **zero** as of February 29, 2024.

33. Plaintiffs were extremely concerned about this drop in the reported value of ProudLiving, and made inquiries to Gebert. Gebert then invited Plaintiffs to a brunch meeting at a restaurant in which Gebert introduced Plaintiffs to principals of the ProudLiving fund including Thomas J. Caleca (known as "T.J.") and Rocky Fuoco, who was introduced as Vice President of Operations.

34. Gebert, Caleca and Fuoco claimed that the delay in distributions and loss in reported value was that ProudLiving was under a "full audit" which would soon be resolved. They indicated in substance that there was nothing to worry about.

35. Plaintiffs continued to wait for better news in reliance on these assurances and from Caleca and Fuoco, as well as repeated assurances from Gebert. However, their alarm grew when, in response to investors' complaints and requests for information, on January 3, 2025, ProudLiving sent an e-mail message reading as follows to Plaintiffs:

> We are currently evaluating the legal process to close Proudliving New Jersey Real Estate Fund LP and based upon the advice of legal counsel we are unable to share any additional information at this time. If and when we are able to share additional information in the future, we will do so. Thank you for your understanding and continued cooperation.

36. On January 9, 2025, brokerage Charles Schwab, which had taken custody of Plaintiffs' investments after a merger with TD Ameritrade, notified Plaintiffs that it would not longer maintain custody of Plaintiffs' ProudLiving investment. *See* **Exh. 5.**

37. Plaintiffs are now left with an investment that is likely worthless, and, are faced with the possibility of living with substantially diminished retirement funds for many years.

38. Plaintiffs now bring this action seeking money damages to compensate them for their financial losses due to Defendant's breaches of duty.

## COUNT I

### Breach of Fiduciary Duty

### (Plaintiffs against Defendant Brookstone)

39. Plaintiffs reallege and incorporate by reference each and every allegation contained in the paragraphs above as though fully set forth herein.

40. As an Investment Adviser Representative and a Registered Investment Adviser, respectively, Gebert and Brookstone are fiduciaries who owe the highest duty of loyalty to those on whose behalf they act.

41. On information and belief Gebert at relevant times introduced client assets to an advisory platform managed by Brookstone and acted as a solicitor for Brookstone. Gebert's conduct alleged herein was performed within the scope and course of his agency, as evidenced by the fact that the subject ProudLiving units whose sale was solicited by Gebert, were deposited in Plaintiffs' JTWROS Account with Brookstone. Therefore, Brookstone, in addition to being liable for its own derelictions of duty, is vicariously liable for the acts of its agent, Gebert, under the principle of *respondeat superior*.

42. Based on their representations, their expertise, and the professional services as investment advisers that they offered to the Plaintiffs, and as a matter of state and federal law, the Defendant Brookstone and Gebert each owed the Plaintiffs a fiduciary duty to act in the utmost good faith in the best interests of the Plaintiffs.

43. The Plaintiffs were advisory clients of Brookstone dating back to at least 2019. The Plaintiffs reposed complete trust and confidence in both Gebert and Brookstone to handle

their investments in accordance with their age, investment objectives, needs, and risk tolerance, and to conduct themselves with the Plaintiffs' best interests in mind.

44. Plaintiffs also relied on the ability of Gebert and Brookstone to conduct due diligence on the investments they recommended, and to act at all times with in the best interest of the Plaintiffs to select investments that were in their best interests. The acts described above constituted a breach of this fiduciary duty, showing complete indifference and disregard of Plaintiffs' best interest.

45. The ProudLiving investment was unsuitable for Plaintiffs, and not in their best interest, in that it was a high risk, illiquid investment in which the Plaintiffs could suffer substantial principal losses.

46. Further, separately from the individual characteristics and risks of the ProudLiving fund, the investment recommendation to concentrate a high percentage of the Plaintiffs' savings in single illiquid, non-registered investment was completely inconsistent with Plaintiffs' stated desire to generate income with reasonably safe, secure investments. As a result of the unsuitable investment recommendation to Plaintiffs to purchase ProudLiving units, Gebert and Defendant Brookstone breached the fiduciary duties that they owed the Plaintiffs.

47. In addition, on information and belief Brookstone failed to conduct proper due diligence on the ProudLiving investment and/or failed to provide Plaintiffs with complete and accurate information concerning the risks posed by ProudLiving investment. Gebert and Brookstone also failed to recommend an appropriately diversified asset allocation that would have avoided the enormous losses that Plaintiffs incurred in ProudLiving, and would have resulted in substantial appreciation in Plaintiffs' accounts.

48.     As a direct and proximate result of these breach of fiduciary duty by Brookstone, Plaintiffs were damaged in an amount to be determined according to proof.

## COUNT II

### Negligence and Professional Negligence

### (Plaintiffs against All Defendants)

49.     Plaintiffs reallege and incorporate by reference each and every allegation contained in the paragraphs above as though fully set forth herein.

50.     Throughout the course of their dealings with the Plaintiffs, Defendants were also under a duty to act with reasonable care in their professional activities and dealings with the public.

51.     Defendants, in the course of providing professional advice and/or investment related services, were required to use the skill and due care that a reasonably careful investment advisor or business person would have used in similar circumstances. The duty of due care also required that the Defendants conducted reasonably effective due diligence any investments that they recommended and/or sold, and/or assisted in offering to public investors, to ensure that these investments were legitimate.

52.     Plaintiffs are informed and believe, and on that basis allege, that the Defendants failed to use the skill and due care that a reasonably careful investment advisor or business person would have used in similar circumstances, by virtue of their acts and omissions as alleged above.

53.     A reasonably careful investment advisor or business person also would not have recommended or effectuated the sale of, or assisted in the offering of, the ProudLiving investments to the Plaintiffs in similar circumstances.

54. As a direct and proximate cause of the Defendants' negligence and professional negligence, the Plaintiff has suffered damages in an amount according to proof.

## COUNT III

### Negligent Retention and Supervision

### (Plaintiffs against Brookstone)

55. Plaintiffs reallege and incorporate by reference each and every allegation contained in the paragraphs above as though fully set forth herein.

56. Brookstone is an SEC-registered Registered Investment Adviser (RIA), which provides investment advice for compensation.  In this role, Brookstone was charged with the duty of contracting with competent investment adviser representatives (IARs) who would make suitable investment recommendations to its clients, and act consistent with the fiduciary duties that it owed its clients.

57. At all relevant times, Gebert was registered with the SEC as an IAR and also acted as an agent of Brookstone.

58. Brookstone had a duty to supervise Gebert to detect, prevent, and report any activities inconsistent with Brookstone's procedures and policies, professional standards of conduct, or legal/regulatory requirements.   On information and belief, Brookstone also would have maintained written supervisory procedures (WSPs) which obligated Brookstone to supervise its IARs and/or agents.

59.  Brookstone breached its duty to retain competent investment adviser representatives (IARs) and agents as it knew or should have known that Gebert was unfit to make suitable investment recommendations to clients.  It was a matter of public record at relevant times that Gebert had acted in a dishonest fashion previously that had resulted in

13

regulatory sanctions. Gebert had been sanctioned by both New Jersey and Oregon for dishonest conduct in his work as an investment advisor representative (or IAR). *See* **Exhs. 2 and 3.** Gebert also had been terminated in 2019 by a previous employer, Registered Investment Advisor AE Wealth Management, LLC, for "potential inappropriate activity related to a client account serviced by Mr. Gebert." Had Brookstone adhered to its duties, it would have not have retained Gebert in the first place and it would have prevented him from recommending that the Plaintiffs invest in ProudLiving.

60. As a direct and proximate cause of Brookstone's negligent retention and supervision, the Plaintiff has suffered damages in an amount according to proof.

## COUNT IV

### Aiding and Abetting Breach of Fiduciary Duty

### (Plaintiffs against Conover and Hudson)

61. Plaintiff realleges and incorporates by reference each and every allegation contained in the paragraphs above as though fully set forth herein.

62. By virtue of their actions alleged herein, Defendants Conover and Hudson had knowledge of the conduct constituting Brookstone and Gebert's breaches of fiduciary duty, and knowingly participated in, assisted and enabled that conduct.

63. Specifically, Conover and Hudson, established as fiduciary investment advisors, lent Hudson's name to ProudLiving, and were listed as related persons in the Form D filed with the SEC in connection with the ProudLiving offering. Conover and Hudson also collected investor questionnaires and forms from investors in ProudLiving, solicited investments in ProudLiving, and otherwise substantially assisted Gebert and Brookstone in their breaches of fiduciary duty in connection with the ProudLiving offering.

64.     By collecting the subscription paperwork and questionnaires, Conover and Hudson were aware of the identities of investors solicited by Gebert, and would have been aware that Gebert was acting in a fiduciary capacity for investment advisory clients such as Plaintiffs.

65.     As such, Conover and Hudson knowingly and substantially assisted Brookstone and Gebert's breaches of fiduciary duty.

66.     Plaintiffs have been damaged as a result, in an amount to be proven at trial.

## DEMAND FOR JURY TRIAL

67.     Plaintiffs demand a trial by jury on all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

A.     Awarding Plaintiffs compensatory damages against Defendants in an amount to be determined at trial;

B.     Granting prejudgment interest on any award in favor of Plaintiffs;

C.     Awarding Plaintiffs their costs and disbursements; and

D.     Granting Plaintiffs such other and further relief as to the Court may seem just and proper.

Dated:      February 4, 2025

>     LAW OFFICE OF
>     CHRISTOPHER J. GRAY, P.C.
>         /s/ *Christopher J. Gray*
>     By: _____
>         Christopher J. Gray
>     60 East 42nd Street, 46th Floor
>     New York, New York 10165
>     (212) 838-3221
>     (212) 937-3139 (fax)
>     Chris@investorlawyers.net
>
>     *Counsel for Plaintiffs*

15